## No. 8131.

### STATE OF LOUISIANA EX REL. McGEE, SNOWDEN & VIOLETT vs. JUDGES COURT OF APPEALS, PARISH OF ORLEANS.

This Court, under the supervisory power granted to it by Article 90 of the present Constitution, and in the exercise of the original jurisdiction thereby vested upon it, can compel by *Mandamus* an inferior Court to try a case over which the latter has decided it has no jurisdiction, and which is not appealable to this Court.

A case decided by the late Sixth District Court for the Parish of Orleans, in January, 1880, in which the demand was for less than $500, could not be appealed from to the Court of Appeals after the organization of the latter.   In default of provisions in the Constitution of 1879, for an Appeal under such circumstances, the judgment of the District Court was final.

APPLICATION for Writ of Mandamus.

*Kennard, Howe & Prentiss* for the Relators.

*Mott & Kelly* for the Respondents:

First—The judgment of an inferior court upon any question which such court has jurisdictional competency to hear and determine, cannot be set aside by the Supreme Court by writ of mandamus.

Second—The Court of Appeals for the parish of Orleans is competent to hear and determine questions concerning the extent of its jurisdiction ; and from the final judgments of that Court upon such questions, no appeal lies to the Supreme Court, and a writ of mandamus can not be made to serve the purposes of an appeal.

Third—The jurisdiction of the Sixth District Court of the parish of Orleans, from the date of the adoption of the Constitution of 1879, to that of the entering into office of the Judges of the Civil District Court, for the parish of Orleans, on the first Monday of August, 1880, continued the same as it had been prior to the adoption of the Constitution of 1879, and was final in all cases, when the amount in dispute did not exceed $500.

State ex rel. McGee, Snowden & Violett vs. Judges Court of Appeals.

The opinion of the Court was delivered by

BERMUDEZ, C. J. This is an application for a *mandamus*. The rela-tors aver that a judgment for $480, rendered against them by the Sixth District Court, was signed on January 9th, 1880; that they have ap-pealed therefrom to the Court of Appeals for the parish of Orleans; but that said Court has refused to entertain jurisdiction of said cause, on the ground that no appeal in January, 1880, lay from said District Court to said Court of Appeals in such a case. They formulate the usual charges consequent upon unjust refusal, and pray that a *manda-mus* issue to compel the said Court to try and determine the cause on its merits.

The respondents do not deny the facts set forth, but say that they have fully considered the cause, and that their judgment has become final, and, should the order prayed for be considered proper, under Ar-ticle 90 of the Constitution, the relief sought can only be, on a review of the judgment rendered, and that judgment avoided and annulled, and another judgment rendered by the reviewing tribunal, to accord with the law, as declared by said authority. They opposed to their argu-mentative return the elaborate reasons assigned by them in a given similar case, to justify the dismissal of the appeal in the case.

The answer draws in question the power of this Court, in an unap-pealable case, to pass upon the propriety or impropriety of the refusal of a judge, or of judges of an inferior court, to try a suit when such re-fusal is based on the want of jurisdiction. The answer put at issue the correctness of the ruling, and inappropriately argues upon what should be the course to be pursued by this Court were the order sought consid-ered proper.

It is not to be denied that, as a rule, to each court it appertains to decide questions of jurisdiction arising before it, and that its rulings re-main final, unless in appealable cases, where, if erroneous, they can be corrected by the appellate court. Such would, undoubtedly, be our de-cision but for Article 90 of the Constitution, which declares that this Court shall have control and general supervision over all inferior courts, and shall have power to issue writs of certiorari, prohibition, mandamus, quo warranto, and other remedial writs.

We consider that we are vested, under that article, with the pow-ers, not of an appellate court, which can pass upon the *merits* of an ad-judicated suit, but of a supervisory court, which can ascertain the va-lidity of proceedings before inferior courts, determine whether such courts have exceeded the bounds of their jurisdiction, direct the judge or judges thereof to perform the duties of their office conformably to law, and which can issue other remedial process. C. P. 855, 845, 829, Rem. 149, 187.

It is important to note that such control and general supervision was never before delegated to any previous Supreme Court in this State. The jurisprudence on the subject of the issuance of writs of *mandamus* and other remedial writs, particularly since 1845, when some constitutional change intervened, should not, therefore, be always invoked as a guide to this Court in the exercise of such supervisory powers.

One of the duties required by law of the judge or judges of a court is to determine, in the exercise of a sound discretion, what the cases are over which they have either an original or appellate jurisdiction. When they refuse to try such cases, because they consider that they have no jurisdiction over them, the litigant who insists upon a trial, is not, under the new organic law, left without a *forum* before which to complain and by which to be relieved on a proper showing.

While the authorities are that in all matters resting within the jurisdiction of an inferior court, and upon which it has acted in an official capacity, a mandamus will not lie to review its proceedings or to revise its rulings; yet where the matters in question are clearly within the power of the inferior court, but it refuses to exercise its jurisdiction, or to entertain the proceedings, the writ will lie to compel the Court to act. Thus, where it is made the duty of an inferior court to entertain her appeals from justices of the peace, it has been held that a *mandamus* will lie for a refusal to perform the duty. High on Ex. Rem., § 150.

A distinction is recognized between cases where it is sought by *mandamus* to control the decision of the inferior court upon the merits of a cause, and cases where it has refused to go into the merits of the action, upon an erroneous construction of some question of law or of practice, preliminary to the whole case. While the decision on the *merits* will not be controlled by mandamus, yet if the court has erroneously decided some question of law or of practice, presented as a preliminary object, and upon such erroneous construction has refused to go into the merits of the case, a mandamus will lie to compel it to proceed. High on Ex. Rem. § 151; 7 An. 126; 4 R. 227; 9 An. 14; 17 An. 252; 20 An. 521; 30 An. 156.

These principles clearly apply to cases in which the right of appeal would be thwarted, and where justice and reason require that some mode should exist of redressing a wrong or an abuse of any nature whatever, and where the power to enforce them is formally lodged in a court which has control and general supervision over all inferior courts. C. P. 830, Const. 90; High on Ex. Rem. 186, 188; 2 An. 979; 3 An. 716; 8 An. 92; 9 An. 250; 10 An. 420.

If we could not review, on an application for a mandamus, the action

of a court of last resort, declining jurisdiction over a case before it, what remedy would the complainant have, and what would be the instances on which this Court would have to exercise its supervisory powers, as relates to Courts of Appeals? To decline hearing and relief, on showing in proper cases, would be practically to write out of the Constitution the wholesome provisions contained in article 90.

In two cases we have exercised that supervisory power, and have directed Courts of Appeals to try cases over which they had decided that they had no jurisdiction, and which we thought it was their duty to determine. 32 An. 774; and State *ex rel.* Harper vs. Judges, not yet reported, No. 8118, O. B. f.

Considering that we can review the ruling of the Court of Appeals in the form submitted, we will now proceed to inquire into its correctness.

It is clear that the Constitution took effect after the proclamation of its adoption. Art. 262. When it went into operation all laws consistent with it were expressly continued in force, Art. 258; but all laws inconsistent with it were abrogated, except such as related to the duties of the several officers, executive, j.dicial and military, which were to remain in full vitality until the organization of the new government, and the entering into office of the new officers, to be appointed or elected under said government, and no longer. Art. 259.

The article was adopted, in order that no inconvenience would result to the public service from the taking effect of the Constitution. The object was to bridge over the former government until the organization of the new government by the induction into office of all its officers. The continuance was to be general, unless in exceptional cases specially provided for. To prevent the apprehended and otherwise unavoidable inconvenience, it was that the offices and officers in existence were continued *in esse*, until the time came when the offices and officers, created by the Constitution, would supersede them. All the laws relative to those offices and officers were maintained in being until the happening of that event. No office, no officer was superseded; no law concerning either, even contrary to the Constitution, was to be by it abrogated until the organization of the new government had taken place.

Thus it is, that all the courts created by or under the· Constitution of 1868, and the judges thereof, as well as all the laws relative to them, were continued in force until the courts created by the Constitution of 1879 to supersede them were organized, and the judges thereof were inducted into office, and the laws relative to them became operative.

The Supreme Court, created by the Constitution of 1868, with the justices composing it, was continued *in esse* until the first Monday of

April, 1880, when the Supreme Court, created by the Constitution of 1879, with the justices composing it, and until then *in posse*, was organized. All the laws, constitutional and statutory, in force at the adoption of the Constitution of 1879, except where it was expressly provided otherwise, were continued in existence, governing the old, until the organization of the new court. It was, however, provided that all causes pending before the late Supreme Court were to be transferred to the Supreme Court created by the new Constitution, as soon as it would be organized, and the late Court was directed to transfer at once to the Court of Appeals, in and out of the parish of Orleans, all the causes coming within the latter's jurisdiction. Arts. 129, 261.

The case was the same with all the other courts, district, parish, and justices of the peace. The Parish Courts were to be blotted out of existence entirely. The system of District Courts was to disappear also. New District Courts were provided for, which were to supersede the Parish and the Districts Courts previously in existence. Their territorial jurisdiction was defined, and their powers were enlarged. They were given a probate jurisdiction, which they did not possess before, but their judgments were stripped of finality when in excess of two hundred dollars. There was also some provision relative to justices of the peace out of the parish of Orleans. As to those in that parish, they were to cease to have any further existence, and were to be replaced by the City Courts in civil matters. Such as entertained criminal jurisdiction, which could not be exercised by any other authority, were continued in existence. All the laws concerning the District Courts, the Parish Courts, the Justices' Courts, and concerning the judges thereof, were likewise continued in force, until the courts created to replace them had been organized, and the judges thereof inducted into office; that is, on the first Monday of April, 1880, outside of the parish of Orleans, and the first Monday of August, 1880, within the parish of Orleans.

State ex rel. Hernandez vs. Pardee, 32 An. p. 638.

State ex rel. Cheevers vs. Duffel, 32 An. p. 649.

State ex rel. Howard vs. Walsh, 32 An. p. 1234.

State ex rel. Harper vs. Judges, 32 An. p. 1308.

State ex rel. Cobb vs. Judges, 32 An., 774.

State ex rel. Fredericks vs. Judge City Court, 33 An. ante p. 146.

Not so was it, however, with the Courts of Appeal. They were created by the Constitution of 1879, and sprung into existence upon its adoption, although the judges who were to preside over them had not even been elected. They were to succeed no court. They were in being. The Constitution required the Supreme Court to transfer to

them *at once* all causes in which the matter in dispute would exceed five hundred, but not one thousand dollars, Art. 129, 261. They had no predecessors. Until the time of their respective organization, as already stated, until the induction into office of the judges who were to preside over them, their powers were dormant, and could not be exercised. They attached, however, at once to all cases which were transferable from the Supreme Court, but did not to cases in which five hundred dollars and less were involved, and which were pending before the District Courts, and which were to be decided before the day fixed for their respective organization; for, under the provisions of articles 259 and 266, the District Courts continued to have over them the same jurisdiction which they had before the adoption of the Constitution, and could decide them *finally*, provided it were before the organization of the Courts of Appeal.

The right of appeal in cases before the District Courts to the Court of Appeals did not arise in that class of cases before the organization of the latter, and could not be exercised if the cases had been decided before that organization, while it could be exercised in all cases in which the matter in dispute exceeded *five* but not *one* thousand dollars.

As long, therefore, as the late District Courts continued in existence in the parish of Orleans, they were clothed with *final* jurisdiction in all cases up to five hundred dollars; and what judgments they rendered and signed in such cases, from the adoption of the Constitution of 1868, up to the first Monday of August, 1880, when the Court of Appeals for the parish of Orleans was organized, and its judges entered upon the discharge of their functions, were final and executory, and could not be reviewed by appeal.

Why is it that the Convention did not provide that in all cases involving more than two hundred dollars, up to five hundred dollars inclusive, without interest, and pending at the adoption of the Constitution, or instituted thereafter and before the organization of the Court of Appeals, parties litigant would be entitled to an appeal to these courts, is a question on which we have no opinion to express.

Our duty is to ascertain what the instrument contains, and when we have done so, to expound its contents. We are powerless to supply deficiencies. To do so would be to arrogate to ourselves powers of judicial legislation, which we have neither the desire nor the authority to do.

It may well be that the members of that body never thought that by not providing in that manner, while they afforded redress to litigants in cases in which five hundred dollars *plus* a fraction, however incalculable, were claimed, they denied relief to another class of litigants, in cases in which five hundred dollars *minus* a fraction, however insignifi-

cant, were asked. It may well be also that they did consider the consequences of the omission, and deemed it wiser not to make the provision, as it would prove an innovation upon the condition of things· which the policy and object of the Constitution were to continue *in statu quo*, until the organization of the new government in its several· departments.

Considering, therefore, that the judgment declared upon by the relators was rendered by the late Sixth District Court, for the parish of Orleans, under a system of laws, which authorized it to adjudicate *finally* in such cases, and that it did so adjudicate finally in the case· mentioned, and that the judges of the Court of Appeals, for the parish of Orleans, decided correctly in refusing to entertain jurisdiction over said case, and in striking it from their docket,

It is ordered that the application for a *mandamus* be refused at the· cost of the relators.